**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JESSICA DURHAM,** individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CLARITY DEBT RESOLUTION, INC. d/b/a ALLIANT SOLUTION GROUP, d/b/a RELIANT SOLUTION GROUP**, a California Corporation and **ASPIRE LAW GROUP, PLLC**, a Michigan Professional Limited Liability Company<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.: [Case No.]<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Jessica Durham ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendants CLARITY DEBT RESOLUTION INC. d/b/a ALLIANT SOLUTION GROUP, d/b/a RELIANT SOLUTION GROUP ("Clarity") and ASPIRE LAW GROUP, PLLC ("Aspire") (collectively "Defendants") to stop Defendants' unlawful practice of initiating and causing to be initiated unsolicited prerecorded and artificial voice calls, including ringless voicemails, to consumers' cellular telephones without prior express written consent, in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff seeks injunctive relief and monetary damages on behalf of herself, and all similarly situated persons harmed by Defendants' conduct. Plaintiff alleges the following upon personal knowledge as to her own acts and experiences, and upon information and belief as to all other matters, including investigation conducted by her counsel.

## INTRODUCTION

1. Telemarketing calls and text messages are intrusive. A substantial number of people object to these communications, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' id. § 2(6) and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' id. § 2(9).

2. Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendants' and/or their affiliates, agents, and/or other persons or entities acting on the Defendants' behalf violated the TCPA by making telemarketing calls using automated or pre-recorded voice messages to Plaintiff and other putative class members as alleged below.

## PARTIES

3. Plaintiff Jessica Durham is an individual residing in this district and was present for all causes of action complained of herein within this district of Nashville Tennessee.

4. Defendant Clarity Debt Resolution Inc. is a corporation headquartered in Irvine, California. Defendant Clarity conducts business in this District, Tennessee, and the U.S.

5. Defendant Aspire Law Group, PLLC is a professional limited liability company headquartered in Detroit, Michigan. Defendant Aspire conducts business in this District, Tennessee, and the U.S.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 et seq

7. This Court has general personal jurisdiction over the Defendants' because they regularly do business in this District.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were orchestrated and sent to individuals in this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## COMMON ALLEGATIONS

9. Defendants' market unsecured debt-relief and loan-related services to consumers and conduct a unified telemarketing campaign using centralized intake and enrollment procedures to solicit and convert consumers.

10. Defendants' telemarketing campaign utilizes artificial or prerecorded voice messages delivered via ringless voicemail technology to consumers' cellular telephones as a primary means of solicitation.

11. Defendants prerecorded ringless voicemail campaign (hereinafter "RVM campaign") targeted Plaintiff and the putative Class without prior express written consent, using uniform scripts, rotating caller identification, and standardized enrollment workflows.

12. In response to the Defendants' RVM campaign, Plaintiff brings this case seeking injunctive relief requiring Defendants' to cease from violating the TCPA, and an award of statutory damages of the putative class and costs.

## **FACTUAL ALLEGATIONS**

13. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14. Defendant Clarity is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15. Defendant Aspire is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16. Plaintiff is the subscriber and sole user of the cellular telephone number ending in -3861, which is her only telephone number.

17. Plaintiff's cellular telephone number ending in -3861 is her only number that she uses primarily for personal, residential, and household purposes, and also relies on the number for time-sensitive communications related to her medical practice, including patient and family communications.

18. Plaintiff does not operate her cellular telephone number as a telemarketing line and has never consented to receive prerecorded or ringless voicemail solicitations on that number.

19. Despite this, the Defendants' telemarketing campaign targeted and inundated Plaintiff's cellular telephone number ending in -3861 with over one hundred fifty (150) prerecorded ringless voicemails from early September 2025 through the present.

20. Ringless voicemail technology delivers prerecorded or artificial voice messages straight into a consumer's voicemail without ringing the phone and is treated as a "call" under the TCPA requiring prior express written consent.

21. RVM's are often employed in large-scale telemarketing campaigns to deliver identical prerecorded solicitations to thousands of consumers simultaneously, circumventing live dialing restrictions while still achieving mass outreach.

22. Defendants' RVM campaign followed a uniform prerecorded script—"loan department/underwriting," "preapproved offer," opt-out prompts, and urgent call-back instructions—indicating a single coordinated campaign rather than unrelated callers.

23. Defendants' RVM campaign used rotating originating numbers and geographic spoofing while keeping the same prerecorded pitch—an industry-standard tactic to evade blocking and conceal the true sender.

24. Plaintiff first became aware of Defendants Clarity and Aspire through an inbound call to her cellular telephone number ending in -3861 on September 29, 2025, from phone number 680-243-6103.

25. Upon answering, Plaintiff immediately heard an artificial or prerecorded voice promoting a "loan offer" before the call was transferred to a live agent.

26. The call transferred Plaintiff to an agent with Alliant Solution Group d/b/a Defendant Clarity, who solicited Plaintiff for debt-relief services as part of Defendants' telemarketing campaign.

27. During that same call, Plaintiff was provided enrollment information and transmitted emails memorializing the debt-relief program, including financial "program snapshot" materials generated by Clarity's agent. *See Exhibit A.*

28. During the same call, Plaintiff was also sent an electronic signature request through ClixSign for an Aspire Law Group retainer agreement. *See Exhibit A.*

29. The September 29 interaction did not involve any consent by Plaintiff to receive prerecorded or RVM's and did not authorize Defendants to initiate or continue prerecorded telemarketing to Plaintiff's cellular phone ending in -3861.

30. At the time of the September 29 call, Plaintiff had already been receiving Defendants' RVM's, defeating any claim that the call created a new business relationship authorizing future prerecorded communications.

31. Plaintiff has never executed any agreement granting Defendants' permission to deliver artificial or prerecorded voice messages and has never agreed to receive ringless voicemails as part of any alleged relationship.

32. The September 29 call heightened Plaintiff's concern regarding the ringless voicemails that continued to inundate her cellular phone, prompting her to investigate the source of the campaign.

33. To identify the party responsible, Plaintiff was compelled to divert time from her professional obligations and family responsibilities to return select ringless voicemails.

34. Plaintiff responded to and verified the campaign through multiple callbacks spaced a month or more apart on October 8, November 5, and December 13, 2025.

35. Each callback verification produced the same result, connection to Clarity-side agents and issuance of an Aspire retainer package.

36. On October 8, 2025, Plaintiff returned the following RVM prompting Plaintiff to call 833-487-2627.




37. Plaintiff reached an agent using Reliant Solution Group email infrastructure, who solicited Plaintiff for debt relief services and delivered an enrollment "program snapshot" substantially identical to the Alliant communication on September 29. *See Exhibit B.*

38. During the same call, Plaintiff was again sent an electronic signature request through ClixSign for an Aspire Law Group retainer agreement. *See Exhibit B.*

39. On November 5, 2025, Plaintiff returned the following RVM prompting Plaintiff to call 833-487-2679.




40. Plaintiff was routed to another Reliant Solution Group agent, who repeated the same enrollment process, solicited Plaintiff for debt relief services, and sent the same type of "program snapshot." *See Exhibit C.*

41. During the same call, Plaintiff again was sent an electronic signature request through ClixSign for an Aspire Law Group retainer agreement. *See Exhibit C.*

42. On December 13, 2025, Plaintiff returned the following RVM prompting Plaintiff to call 833-487-2757.




43. Plaintiff was routed to an agent using Better Path Lending branding, who solicited Plaintiff for debt relief services and sent Plaintiff an enrollment email that is nearly verbatim to the Reliant/Alliant communications. *See Exhibit D.*

44. Better Path Lending functioned as another front-end intake brand for the same campaign because the script, structure, and enrollment metrics match the Reliant/Alliant communications and again culminated in Aspire contract issuance. *See Exhibit D.*

45. Each time Plaintiff returned an RVM, the call followed the same intake script: identity confirmation, personal and employment information, income, date of birth, email capture, and a soft credit inquiry to assess unsecured debt.

46. Those intake steps are not random "conversation"—they are standardized pre-enrollment procedures that Clarity-side agents use to qualify consumers for Aspire's debt-relief legal services.

47. Upon information and belief, Aspire Law Group functioned as the central and controlling entity of the program marketed through Defendants' telemarketing campaign, as evidenced by the uniform intake process and repeated transmission of Aspire retainer agreements generated by the calls.

48. Plaintiff provided Defendants' counsel with written notice of the unlawful campaign and provided documentation on December 4, 2025, yet Defendants failed to suppress Plaintiff's number or stop the prerecorded RVM deliveries.

49. Despite written notice to Defendants' counsel, Defendants' RVM campaign continued to target Plaintiff's cellular telephone number ending in -3861 no fewer than sixty (60) additional times and has persisted through the present day, evidencing knowing and willful conduct.

50. Defendants' RVM campaign lacked prior express written consent from its inception and remained unlawful regardless of Plaintiff's limited investigative responses to identify the source of the calls.

51. Defendants generated Plaintiff's lead through unlawful telemarketing practices.

52. Defendants' RVM campaign established severe repetition, invasion, and a scalable class-wide dialing operation.

53. Defendants' and/or their agents, affiliates or lead vendors exclusively control the dialing platforms, RVM technology, caller-ID rotation logic, suppression lists, and logs that will confirm the full call volume and the identities of every entity responsible for transmitting prerecorded RVMs to Plaintiff.

54. Defendants have previously been accused in other actions of engaging in similar telemarketing practices involving prerecorded messages and ringless voicemails, placing them on notice of the TCPA's requirements and their obligation to prevent unlawful calling practices.

55. Defendants employed a standardized prerecorded ringless voicemail campaign to market debt-relief services nationwide using uniform scripts, rotating callback numbers, and centralized intake procedures.

56. Defendants' agents used the same qualifying intake criteria, enrollment workflow, and Aspire contract process for Plaintiff and each member of the Class, demonstrating common conduct across all class members.

57. The ringless voicemails transmitted to Plaintiff and the Class were generated and delivered using the same dialing platforms and prerecorded messages, regardless of which intake brand name was displayed.

58. Defendants' liability arises from a common course of conduct and does not depend on individualized interactions or consent determinations.

59. Aspire Law Group is vicariously liable for the prerecorded ringless voicemail and telemarketing calls placed to Plaintiff because the calls were made by entities acting with Aspire's actual and apparent authority and were knowingly ratified by Aspire. Aspire knowingly permitted Clarity Debt Resolution, Inc. and its affiliated intake brands—including Alliant Solution Group, Reliant Solution Group, and Better Path Lending—to market Aspire's legal services, qualify consumers using Aspire-specific intake criteria, collect personal and financial information, conduct credit checks, and transmit Aspire retainer agreements during the same calls initiated by prerecorded messages. Aspire accepted, reviewed, and benefited from the resulting consumer leads and retainer submissions generated by these calls, exercised control

over the enrollment process, and continued accepting business even after learning that the calls were placed using artificial or prerecorded voice messages without prior express written consent. By authorizing these entities to act on its behalf, holding them out as part of a unified enrollment program, and knowingly accepting the benefits of their unlawful telemarketing, Aspire is responsible for the TCPA violations committed by its agents.

60. Plaintiff was harmed by the alleged calls.

61. The alleged calls that Plaintiff received on behalf of Defendants harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

62. Seeking redress for these injuries, Plaintiff, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ACTION ALLEGATIONS

63. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) The Defendants' called and/or any entity making calls on behalf of Defendants' (2) using an artificial or pre-recorded voice.

64. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants', their subsidiaries, parents, successors, predecessors, and any entity in which either Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons;

and (6) persons whose claims against the Defendants' have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

65. **Numerosity and Typicality:** On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

66. **Commonality and Predominance:** There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendants' and/or their agents placed pre-recorded voicemails or calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of the Defendants' conduct.

67. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and the Defendants' have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the Class.

68. **Appropriateness:** This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. The Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on the Defendants' conduct with respect to the Class as whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from the Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227 (b)**
**(on behalf of Plaintiff and the Pre-recorded No Consent Class)**

69. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully restated in this section.

70. The Defendants' and/or their agents or affiliates transmitted unwanted telephone calls to Plaintiff and the other members of the Pre-recorded No Consent Class using pre-recorded voice messages.

71. These pre-recorded voice calls were made en masse without the prior express consent of Plaintiff and the other members of the Pre-recorded No Consent Class.

72. The Defendants' and/or their agents or affiliates have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of the Defendants' conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that the Defendants' actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendants' to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

/s/ Steven Gill

Steven Gill
The Law Office of Steve Gill
TN BPR no. 009969

320 Old Hickory Blvd. #2010
Nashville, TN 37212
(615) 243-0976
Stevegilllaw40@gmail.com

*Attorneys for Plaintiff and the Putative Class*

Dated: February 2, 2026